**Declarations Page**

# Insurance Services Professional Liability Insurance

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION V. A. OF THIS POLICY.**

**PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Whenever printed in this Declarations Page, the boldface type terms shall have the same meanings as indicated in the **Policy**.

Issuing **Company**: Nautilus Insurance Company, an Arizona Corporation
7233 East Butherus Drive
Scottsdale, AZ 85260

**Item 1. Name and Address of Named Insured:** **Policy Number: INS9033954-0120**

Armour Risk Management, Inc.
1880 JFK Blvd., Suite 801
Philadelphia, PA 19103

**Item 2. Policy Period:**

From January 1, 2020 (inception date) to January 1, 2021 (expiration date)
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured**)

**Item 3. Limits of Liability for the Policy Period:**

A. $5,000,000 each **Claim**, but in no event exceeding
B. $5,000,000 in the aggregate for all **Claims**

**Item 4. Deductible:**

A. $250,000 each and every **Claim**
B. Not Applicable in the aggregate for all **Claims**

**Item 5. Retroactive Date:** None

**Item 6. Premium: $43,900**

**Item 7. Professional Services:** Providing third party administrator, claims adjuster services and management consulting services

**Item 8. Supplementary Payments:**

A. Loss of Earnings: $250 each Day but in no event exceeding $10,000 per **Policy Period**
B. **Disciplinary Proceedings:** $10,000 per **Policy Period**
C. Subpoena: $10,000 per **Policy Period**
D. **Cyber Security Breach** Response: $25,000 per **Policy Period**

**Item 9. Forms and Endorsements attached at inception:**

INL07160100 Insurance Services Professional Liability Insurance Policy

| | | | |
|---|---|---|---|
| 1 | BSP01170001 | (01-17) | Fraud Notice |
| 2 | BSP01170008 | (01-17) | Privacy Notice |
| 3 | BSP03190004 | (03-19) | In Witness Provision - Nautilus Insurance Company |
| 4 | BSP07160003 | (07-16) | Claim and Circumstance Reporting Procedures |
| 5 | BSP07160006 | (07-16) | Important Notice To Policyholders |
| 6 | BSP07160012 | (07-16) | Service of Suit - Pennsylvania |
| 7 | BSP07160202 | (07-16) | Amend Definition of Professional Services |
| 8 | BSP07160212 | (07-16) | Additional Insured Coverage |
| 9 | BSP07160234 | (07-16) | Specific Claim or Incident Exclusion |
| 10 | BSP07160245 | (07-16) | Trustee / Financial Consultants Coverage Limitation |

Policy Issuance Date: January 29, 2020
Policy Issuance Office: Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC (CA License No. 0H05115)
180 Glastonbury Blvd, 4th Floor, Suite 402, Glastonbury, CT 06033

**Item 10.** Notice to the **Company** as provided in section V. A. shall be sent to:
Berkley Service Professionals
(C\O Berkley Alliance Managers)
757 Third Avenue, 10th Floor
New York, NY 10017
(844) 895-9735
BAMClaims@berkleyalliance.com

All other notices to be given to the **Company** shall be sent to:
Berkley Service Professionals, A Division of
Berkley Managers Insurance Services, LLC
(C\O Berkley Alliance Managers)
CA License Number: 0H05115
180 Glastonbury Blvd, 4th Floor, Suite 402
Glastonbury, CT 06033
(619) 302-2631

These Declarations along with the completed and signed **Application**, the Insurance Services Professional Liability Insurance Policy form and all written endorsements issued to form part of this policy form shall constitute the contract between the **Named Insured** and the **Company**.

The **Company** hereby causes this **Policy** to be signed on the Declarations page by a duly authorized representative of the **Company**.

Compliance with all surplus lines placement requirements, including stamping the **Policy** and advisement, collection and payment of any applicable surplus lines taxes and fees, is the responsibility of the broker.

**NOTE: SEE ATTACHED NOTICE FOR SURPLUS LINES DISCLOSURE NOTICE**

Authorized Representative of the **Company**

January 29, 2020
Date

Policy Issuance Date: January 29, 2020
Policy Issuance Office: Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC (CA License No. 0H05115)
180 Glastonbury Blvd, 4th Floor, Suite 402, Glastonbury, CT 06033

# Nautilus Insurance Company



## FRAUD NOTICE

**Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.**

**NOTICE TO ALABAMA APPLICANTS AND CLAIMANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

**NOTICE TO ALASKA CLAIMANTS: A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFAUD OR DECEIVE AN INSURANCE COMPANY FILES A CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION MAY BE PROSECUTED UNDER STATE LAW.**

**NOTICE TO ARIZONA CLAIMANTS: FOR YOUR PROTECTION ARIZONA LAW REQUIRES THAT THE FOLLOWING STATEMENT TO APPEAR ON THIS FORM. ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.**

**NOTICE TO ARKANSAS APPLICANTS AND CLAIMANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

**NOTICE TO CALIFORNIA CLAIMANTS: FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM. ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDLENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFEMENT IN STATE PRISON.**

**NOTICE TO COLORADO APPLICANTS, POLICYHOLDERS AND CLAIMANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.**

**NOTICE TO DELAWARE CLAIMANTS: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.**

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS AND CLAIMANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

**Nautilus Insurance Company**



**NOTICE TO APPLICANTS OF FLORIDA AND CLAIMANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.**

**NOTICE TO IDAHO CLAIMANTS: ANY PERSON WHO KNOWLING, AND WITH INTENT TO DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.**

**NOTICE TO INDIANA CLAIMANTS: A PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURER FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FELONY.**

**NOTICE TO APPLICANTS OF KENTUCKY: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.**

**NOTICE TO CLAIMANTS OF KENTUCKY: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.**

**NOTICE TO LOUISIANA APPLICANTS AND CLAIMANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

**NOTICE TO MAINE APPLICANTS AND CLAIMANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**NOTICE TO MARYLAND APPLICANTS AND CLAIMANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

**NOTICE TO MASSACHUSETTS APPLICANTS AND CLAIMANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**NOTICE TO MINNESOTA CLAIMANTS: A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

**<u>NOTICE TO NEW HAMPSHIRE CLAIMANTS:</u> ANY PERSON WHO, WITH A PURPOSE TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS SUBJECT TO PROSECUTION AND PUNISHMENT FOR INSURANCE FRAUD, AS PROVIDED IN RSA 638.20.**

**<u>NOTICE TO APPLICANTS OF NEW JERSEY:</u> ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL PENALTIES.**

**<u>NOTICE TO NEW MEXICO APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWLINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.**

**<u>NOTICE TO NEW YORK APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATEDVALUE OF THE CLAIM FOR EACH SUCH VIOLATION.**

**<u>NOTICE TO OHIO APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.**

**<u>NOTICE TO APPLICANTS, POLICYHOLDERS AND CLAIMANTS OF OKLAHOMA:</u> ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.**

**<u>NOTICE TO OREGON APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO MAY BE COMMITTING A FRAUDULENT INSURANCE ACT, WHICH MAY BE A CRIME AND MAY SUBJECT THE PERSON TO PENALTIES.**

**<u>NOTICE TO PENNSYLVANIA APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.**

**<u>NOTICE TO RHODE ISLAND APPLICANTS AND CLAIMANTS:</u> ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

**NOTICE TO TENNESSEE APPLICANTS AND CLAIMANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**NOTICE TO VIRGINIA APPLICANTS AND CLAIMANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**NOTICE TO WASHINGTON APPLICANTS AND CLAIMANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

**NOTICE TO WEST VIRGINIA APPLICANTS AND CLAIMANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

# PRIVACY POLICY

**Nautilus Insurance Company**
**Great Divide Insurance Company**
**7233 E. Butherus Drive**
**Scottsdale, AZ 85260**
**Phone: 480-951-0905**
**Fax: 480-951-9730**

Nautilus Insurance Company and Great Divide Insurance Company (the "Companies"), member companies of the W. R. Berkley Corporation ("Berkley") group of companies and each other member of the Berkley group of companies ("Affiliates") understands our customers' concern about privacy of their information collected by the Companies. Our Companies are dedicated to protecting the confidentiality and security of nonpublic personal information we collect about our customers in accordance with applicable laws and regulations. This notice refers to the Companies by using the terms "us," "we," or "our." This notice describes our privacy policy and describes how we treat the nonpublic personal information about our customers that we receive from them ("Information").

**Why We Collect and How We Use Information.**

We collect and use Information for business purposes with respect to our insurance products and services and other business relations involving our customers. We gather this Information to evaluate your request for insurance, to evaluate your insurance claims, to administer, maintain or review your insurance policy, and to process your insurance transactions. We also accumulate certain information about you as may be required or permitted by law.

Your insurance agent or broker also collects this Information and may use it to help with your overall insurance program or to market additional products and services to you. We may also use Information to offer you other products or services that we or our Affiliates provide.

**How We Collect Information.**

Most Information collected by us is provided by you or your insurance agent or broker to us. We obtain Information from (i) applications or other forms submitted by you, your insurance agent or broker or your authorized representatives to us and our Affiliates, and (ii) your transactions with us or our Affiliates. We may also obtain Information from other sources such as (i) consumer reporting agencies, (ii) other institutions or information services providers, (iii) employers, (iv) other insurers, or (v) your family members.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

**Information We Disclose**

We disclose any Information which we believe is necessary to conduct our business as permitted by applicable law or where required by applicable law. This disclosure may include (i) Information we receive from you on applications or other forms provided to us and our Affiliates, such as names, addresses, social security numbers, assets, employer information, salaries, etc. (ii) Information about your transactions with us and our Affiliates, such as policy coverages, premiums, payment history, etc., and (iii) Information we receive from a consumer reporting agency, such as credit worthiness and credit history.

**To Whom We Disclose Information**

We may, as permitted or required by applicable law, disclose your Information to nonaffiliated third parties, such as (i) your insurance agent or broker, (ii) independent claims adjusters, (iii) insurance support organizations, (iv) processing companies, (v) actuarial organizations, (vi) law firms, (vii) other insurance companies involved in an insurance transaction with you, (viii) law enforcement, regulatory, or governmental agencies, (ix) courts or parties therein pursuant to a subpoena or court order, (x) businesses with whom we have a marketing agreement, or (xi) our Affiliates.

We may share Information with our Affiliates so that they may offer you products and services from the Berkley group of companies or to analyze our book of business and to consolidate necessary information. We do not disclose Information to other companies or organizations not affiliated with us for the purpose of using Information to sell their products or services to you. For example, we do not sell your name to unaffiliated mail order or direct marketing companies.

**How We Protect Information**

We require our employees to protect the confidentiality of Information as required by applicable law. Access to Information by our employees is limited to administering, offering, servicing, processing or maintaining of our products and services. We also maintain physical, electronic and procedural safeguards designed to protect Information. When we share or provide Information to other persons or organizations, we contractually obligate them, if required by law, to treat Information as confidential and conform to our privacy policy and applicable laws and regulations.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

**Correction and Access to Information**

Upon our receipt of your written request to us at our website, www.nautilusinsgroup.com, via email at nic_regulatory@nautilus-ins.com, toll-free at 1-800-842-8972, and ask for the Regulatory Compliance Department or write to us at Nautilus Insurance Company, 7233 E. Butherus Drive, Scottsdale, AZ 85260, we will, generally, make available Information for your review. If you believe the Information we have about you is incorrect or inaccurate, you may request that we make any necessary corrections, additions or deletions. If we agree with your belief, we will correct our records if required by applicable law. If we do not agree, you may submit to us a short statement of dispute, which we will include in any future disclosure by us of such Information if required by applicable law.

**Requirements for Privacy Notice**

This privacy notice is being provided due to recently enacted federal and state laws and regulations establishing new privacy standards and requires us to provide this privacy policy. For additional information regarding our privacy policy, please contact us at our address at 7233 E. Butherus Drive, Scottsdale, AZ 85260.

Adopted: January 1, 2014

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

# Nautilus Insurance Company



## IN WITNESS PROVISION – NAUTILUS INSURANCE COMPANY

IN WITNESS WHEREOF, the **Company**, an Arizona Corporation, has caused this **Policy** to be executed and attested, and, if required by state law, this **Policy** shall not be valid unless countersigned by our authorized representative.

Secretary

President and CEO

Administrative Office:
7233 East Butherus Drive, Scottsdale, Arizona 85260
(480) 951-0905

Service Office:
Berkley Service Professionals, A Division of Berkley Managers Insurance Services, LLC
CA License Number: 0H05115
180 Glastonbury Blvd, 4th Floor, Suite 402, Glastonbury, CT 06033

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

# Nautilus Insurance Company



## CLAIM OR CIRCUMSTANCE REPORTING PROCEDURES

In the event of an incident which may result in a claim, an actual claim or your receipt of suit papers, please follow the following guidelines:

**NOTICE OF EACH INCIDENT, CLAIM OR SUIT SHOULD BE IMMEDIATELY REPORTED TO:**

Berkley Service Professionals
(C\O Berkley Alliance Managers)
757 Third Avenue
10th Floor
New York, NY 10017
844-895-9735
BAMClaims@BerkleyAlliance.com

**TO ENABLE US TO RESPOND MORE QUICKLY AND EFFICIENTLY**, please use our dedicated **E-mail** address at BAMClaims@BerkleyAlliance.com for reporting your notices, and please include any pertinent details of the claim. The E-mail box is set-up with an auto-reply message so that you receive immediate confirmation that the loss notice has been received. Reporting via E-mail is the preferred method of reporting.

When reporting a Claim or Potential Claim, please be sure to include:

- Your Name, Address, Phone Number and Email Address
- Your Policy Number and the Policy Period
- A written narrative of the circumstances surrounding the Claim or Potential Claim
- Dates of the Claim or Potential Claim
- Names of the persons involved
- Identity of anticipated or possible claimants
- Details of any underlying claim, including current status and the amount in controversy or relief demanded
- Any letters of demand or any legal paper which you have received regarding the claim

All notices must be reported as required by your Policy to avoid problems regarding timely notice.

Please provide your insurance agent or broker a copy of all claim and circumstance notices and correspondence sent to Berkley Service Professionals.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured | | Policy Number |
|---|---|---|
| Armour Risk Management, Inc. | | INS9033954-0120 |
| Effective Date of This Endorsement 01/01/2020 | Authorized Representative | |

**IMPORTANT SURPLUS LINES DISCLOSURE NOTICE TO POLICYHOLDERS**

- The insurance policy you have purchased is being issued by an insurer that is not licensed by your state. These companies are called “Non-Admitted” or “Surplus Lines” Insurance Companies.
- The Insurance Company is not subject to the financial solvency regulation and enforcement which applies to licensed insurers.
- The Insurance Company does not participate in any of the Insurance Guaranty Funds that may exist in your state. Therefore, these Funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.
- Your State Insurance Department maintains a list of eligible Surplus Lines Insurance Companies approved by the Insurance Commissioner. Ask your agent or broker if the insurer is on that list.
- For additional information about the insurer, you should ask questions of your insurance agent, broker for “Surplus Lines” broker or contact your state Insurance Department.
- If you, as the applicant, required that the insurance policy you have purchased be bound immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this **Policy** within five days of receiving this disclosure. If you cancel coverage during that five-day period, the premium will be prorated and any broker fee charged for this insurance will be returned to you.

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

## SERVICE OF SUIT - PENNSYLVANIA

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal.

Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). When making service of process by mail, such process shall be mailed to Janet Shemanske, or her nominee, at Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, Arizona 85260. The above-named is authorized and directed to accept service of process on behalf of the Insured(s) or Underwriter(s) in any such action or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insured(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | | |
|---|---|---|
| Insured<br>Armour Risk Management, Inc. | | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative | |

# Nautilus Insurance Company



## AMEND DEFINITION OF PROFESSIONAL SERVICES

In consideration of the premium paid for this **Policy**, the definition of **Professional Services** in section **III.** of this **Policy** is deleted in its entirety and replaced with the following:

**Professional Services** means the following services performed by the **Insured** for others, including such services that are performed electronically using the Internet or a network of two or more computers:

Providing third party administrator, claims adjuster services and management consulting services

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

# Nautilus Insurance Company

## ADDITIONAL INSURED COVERAGE

In consideration of the premium paid for this **Policy**:

1. Solely with respect to any **Claim** brought and maintained against an **Insured** for a **Wrongful Act** committed or allegedly committed by an **Insured**, this **Policy** will provide coverage to any **Additional Insured**; but only with respect to the **Additional Insured's** liability for the **Wrongful Acts** of the **Insured**.
2. The **Company** has no obligation to provide a defense for the **Additional Insured** except as specifically stated in this endorsement.
3. In no event shall this **Policy** provide coverage for the acts, errors, omissions or professional services of any **Additional Insured**.
4. **Additional Insured** means any individual or entity scheduled below who is not an **Insured**:

| **Name** |
|---|
| Arch Specialty Insurance Company/Arch Insurance Group Inc., Harborside 3, 210 Hudson Street, Suite 300, Jersey City, NJ 07311-1107 |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
|---|---|
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

# Nautilus Insurance Company



## SPECIFIC CLAIM OR INCIDENT EXCLUSION

In consideration of the premium paid for this **Policy**, this **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim** based on, arising from, or in any way involving any of the following matters:

**Description of Excluded Claims and/or Incident**

Bruce Thompson, as a personal representative of the estate of Idsigna

C. Thompson v. Playland Intl., Inc. et al

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

## TRUSTEE / FINANCIAL CONSULTANTS COVERAGE LIMITATIONS

In consideration of the premium paid for this **Policy**, this **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim** based on, or arising out of, or in any way involving: (1) the **Insured's** service as a beneficiary or distributor of any trust or estate; (2) services the **Insured** performs in the capacity as an accountant, registered investment advisor, securities broker/dealer or attorney-at-law; (3) an **Insured** making promises or guarantees as to the future value of any investment; (4) any actual or alleged loss sustained through fluctuations in the investment market; (5) the insolvency, receivership, bankruptcy, liquidation, or financial inability to pay of any company, entity or investment vehicle in which any **Insured** has invested or placed money on behalf of others; (6) loss sustained or alleged to have been sustained by any person or entity that is neither the **Insured's** client nor a client's appointed administrator, executor, receiver, or trustee in bankruptcy; (7) any actual or alleged loss sustained in connection with registering, qualifying or reporting under the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, Public Utility Holding Company Act of 1935, any State Blue Sky law, or any other law governing the registration or issuance of, or transactions involving, securities; or (8) an **Insured** engaging in giving tax advice.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>01/01/2020 | Authorized Representative |

# Insurance Services Professional Liability Insurance Policy

**CLAIMS MADE NOTICE FOR POLICY**

**NOTICE: THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS SUBJECT TO ITS TERMS. THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION V. A. OF THIS POLICY.**

**PLEASE READ THE POLICY CAREFULLY.**

In consideration of the payment of the premium, in reliance on all statements in the **Application** and all other information provided to the **Company**, and subject to all provisions of this **Policy**, the **Company** and **Insureds** agree as follows:

## I. Insuring Agreements

### A. Professional, Cyber, and Media and Personal Injury Liability Insurance Coverage

The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the Deductible, up to the Limit of Liability, that the **Insured** shall become legally obligated to pay as **Damages** and **Claim Expenses** arising from a **Claim** that is both first made against the **Insured** and reported in writing to the **Company** in accordance with section V. A. of this **Policy**, provided that:

1. the **Claim** arises out of a **Wrongful Act**; and
2. no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim** or any such **Wrongful Act** or **Related Wrongful Act**; and
3. prior to the date an **Insured** first becomes an **Insured** under this **Policy,** or became an **Insured** under the first policy issued to the **Named Insured** by the **Company** (or its subsidiary or affiliated insurers), and such insurance coverage has been continuously maintained with the **Company** (or its subsidiary or affiliated insurers) until the effective date of this **Policy**, whichever is earlier, no **Executive Officer** had a basis to believe that any **Wrongful Act**, or **Related Wrongful Act**, might reasonably be expected to be the basis of a **Claim**; and
4. such **Wrongful Act** happened on or after the **Retroactive Date** and before the end of the **Policy Period**.

### B. Defense

1. Duty to Defend

   The **Company** shall have the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **Claim** seeking **Damages** covered by this **Policy** even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as is deemed necessary by the **Company**. If a **Claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

2. Mutual Selection of Defense Counsel

   In the event the **Insured** reports a **Claim** in accordance with section V. A. of this **Policy**, the **Company** and the **Insured** shall mutually agree upon legal counsel to investigate and defend the **Claim**. Such agreement shall not be unreasonably withheld by either the **Company** or the **Insured**; provided, however, that the **Company** reserves the right to make the final determination as to the selection of defense counsel should a dispute arise in such selection.

### C. Settlement

The **Company** may investigate and solicit settlement offers for any **Claim** but shall not settle any **Claim** without the **Named Insured's** written consent. If the **Named Insured** refuses to consent to any settlement recommended by the **Company**, which is acceptable to the claimant, and elects to contest the **Claim**, or continue any legal, administrative, or arbitration proceedings in connection with such **Claim**, then the **Company's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been settled (the Proposed Settlement Amount), including **Claim Expenses** incurred up to the date of such refusal plus 75% of any **Claim Expenses** and **Damages** exceeding the Proposed Settlement Amount. It is a condition of this insurance that the remaining 25% of such **Claim Expenses** and **Damages** shall be borne by the **Insured** at its own risk. Such amounts are subject to the provisions of section II. of this **Policy**.

### D. Exhaustion of Limit

The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **Claim** after the applicable limit of the **Company's** liability has been exhausted by payment of **Damages** and / or **Claim Expenses** or after the **Company** has deposited the remaining available Limit of Liability into a court of competent jurisdiction. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of such investigation, defense or settlement of the **Claim** to the **Insured**.

**E. Allocation**

If a **Claim** made against an **Insured** contains both covered and uncovered matters, then the **Named Insured** and the **Company** will allocate any amount incurred with respect to such **Claim** as follows: (1) 100% of **Claim Expenses** incurred will be covered; and (2) **Damages** will be allocated on the basis of the relative legal and financial exposures of the parties to covered and uncovered matters pursuant to the terms of this **Policy**.

If a **Claim** made against an **Insured** contains both covered and uncovered parties, then the **Named Insured** and the **Company** will allocate any amounts incurred on behalf of any uncovered parties with respect to such **Claim** on the basis of the relative legal and financial exposures of the parties of such covered and uncovered parties pursuant to the terms of this **Policy**.

The **Company** shall not be liable under this **Policy** for the portion of such amount allocated to non-covered **Damages** and / or **Claim Expenses**. In the event that the parties cannot reach a mutually agreeable allocation, the **Company** will advance that portion which the **Company** and the **Insured** agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this **Policy** and applicable law.

## II. Limits of Liability and Deductible

### A. Limits of Liability

1. Each **Claim** Limit of Liability

   The Limit of Liability stated in Item 3. A. of the Declarations is the **Company's** Limit of Liability for all **Damages** and **Claim Expenses** arising out of each **Claim** first made against the **Insured** and reported to the **Company** in accordance with section V. A. of this **Policy**.

2. Aggregate Limit of Liability

   The Limit of Liability stated in Item 3. B. of the Declarations is the **Company's** maximum aggregate Limit of Liability for all **Damages** and **Claim Expenses** arising out of all **Claims** first made against the **Insured** and reported to the **Company** in accordance with section V. A. of this **Policy**, regardless of the number of **Insureds**, **Claims** made, or persons or entities bringing such **Claims**.

3. **Claim Expenses** shall be part of and not in addition to the Limit of Liability and payment of **Claim Expenses** by the **Company** will reduce, and may exhaust, the Limit of Liability stated in Item 3. of the Declarations.

### B. Deductible

1. Each **Claim** Deductible

   The Deductible amount stated in Item 4. of the Declarations shall apply to each and every **Claim** first made and reported to the **Company** in accordance with section V. A. of this **Policy**. Upon the **Company's** written request, the **Insured** must pay the Deductible before the **Company** is obligated to make any payment under the each **Claim** limit. The **Company** will determine the reasonableness of **Claim Expenses** that qualify to satisfy the Deductible.

2. Aggregate Deductible

   The Deductible amount stated in Item 4. B. of the Declarations is the total aggregate amount of the **Insured's** Deductible obligation for all **Claims** first made and reported to the **Company** in accordance with section V. A. of this **Policy**.

3. The Limits of Liability set forth in the Declarations are in addition to and in excess of the Deductible, and the **Company** shall only be liable for the amount of **Damages** and / or **Claim Expenses** arising from a **Claim** which is in excess of the Deductible amount stated in Item 4. of the Declarations.

4. Mediation Credit

   If mediation of a **Claim** takes place either without institution of arbitration proceedings or service of suit or within 60 days of the institution of such arbitration proceedings or service of suit, and such **Claim** is ultimately resolved through such mediation for an amount acceptable to the **Insured** and the **Company**, the **Insured's** Deductible applying to the **Claim** will be reduced by 50% or $25,000, whichever is less.

### C. When a Claim is Made and Multiple Insureds, Claims and Claimants

A **Claim** shall be considered first made when it is received by any **Insured**. All **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be considered a single **Claim** and shall be deemed to be first made on the date on which the earliest **Claim** arising out of such **Wrongful Act** is made, regardless of whether such date is before or during the **Policy Period**.

Subject to the provisions of this **Policy**, the Limit of Liability stated in Item 3. of the Declarations is the maximum amount the **Company** will pay as **Damages** and **Claim Expenses** regardless of the number of **Insureds**, **Claims** made or persons or entities making **Claims**. If **Related Claims** are subsequently made against the **Insured** and reported to the **Company** in accordance with section V. A. of this **Policy**, all such **Related Claims**, whenever made, shall be considered a single **Claim** first made and reported to the **Company** within the **Policy Period** in which the earliest of the **Related Claims** was first made and reported to the **Company**.

### D. Supplemental Payments

Payments made pursuant to this section II. D. of the **Policy** are not subject to the Deductible and shall be in addition to the Limit of Liability stated in Item 3. of the Declarations. The obligation of the **Company** to make payments under this section ends when the applicable sub-limit stated below is exhausted.

1. Loss of Earnings – Attendance at Trial

   If during the **Policy Period** the **Company** requests the attendance of an **Insured** at a trial, hearing, arbitration proceeding or mediation in connection with a **Claim** against such **Insured**, then, upon written request of the **Named Insured**, the **Company** will reimburse the **Insured** up to the amount stated in Item 8. A. of the Declarations for actual loss of earnings and reasonable costs incurred by the **Insured** for each day or part of a day the **Insured** attends. In no event shall the amount payable hereunder exceed the amount stated in Item 8. A. of the Declarations per **Policy Period** regardless of the number of **Insureds** or number of **Claims**.

2. Disciplinary Proceedings

   The **Company** will reimburse the **Insured** for attorney fees and other reasonable costs, expenses or fees, as determined by the **Company**, incurred by the **Insured** resulting from any **Disciplinary Proceeding** incurred as the result of a notice of such **Disciplinary Proceeding** both first received by the **Insured** and reported in writing to the **Company** during the **Policy Period** arising out of a **Wrongful Act** committed on or after the **Retroactive Date** and prior to the expiration of the **Policy Period**. In no event shall the amount payable hereunder exceed the amount stated in Item 8. B. of the Declarations per **Policy Period** regardless of the number of **Insureds** or number of such **Disciplinary Proceedings**. Further, the **Company** shall not be obligated to defend any **Disciplinary Proceeding** or pay any fine, penalty or award resulting from any **Disciplinary Proceeding**.

3. Subpoena Assistance

   If during the **Policy Period** the **Insured** receives a subpoena for documents or testimony arising out of **Professional Services** rendered by the **Insured** and the **Insured** would like the assistance of the **Company** in responding to the subpoena, the **Insured** may provide the **Company** with a copy of the subpoena and the **Company** will retain an attorney to provide advice regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at the **Insured's** depositions, provided that the subpoena arises out of a lawsuit to which the **Insured** is not a party and the **Insured** has not been engaged to provide advice or testimony in connection with the lawsuit, nor has the **Insured** provided such advice or testimony in the past. The **Company** will pay such attorney's legal fees excluding any disbursements. In no event shall the amount payable hereunder exceed the amount stated in Item 8. C. of the Declarations per **Policy Period** regardless of the number of **Insureds** or number of subpoenas. Any written notice the **Insured** gives the **Company** of such subpoena shall be deemed notification of a potential **Claim** under section V. A. of this **Policy**.

4. Cyber Security Breach Response

   If during the **Policy Period**, the **Named Insured** provides written notification to the **Company** of a **Cyber Security Breach** that occurred during the **Policy Period**, the **Company** will engage a qualified firm on behalf of the **Named Insured** to investigate the breach, notify any parties affected by the breach, perform credit monitoring services for the individual personal data or corporate data of clients of the **Named Insured** lost because of the breach, and restore or recreate (if possible) any lost **Content** of clients of the **Named Insured** caused by the breach. In no event shall the amount payable hereunder exceed the amount stated in Item 8. D. of the Declarations per **Policy Period** regardless of the number of **Insureds** or number of breaches.

## III. Definitions

Whenever printed in boldface type, and whether in the singular or plural form in this **Policy**, the following terms shall have the meanings indicated below.

**A.** **Advertising** means any material promoting the products, services or business of the **Insured Organization**.

**B.** **Application** means all signed applications, including any attachments, and all other materials and information provided by or on behalf of the **Insured** to the **Company** for the purpose of underwriting or issuing this **Policy** or any policy of insurance of which this **Policy** is a renewal or replacement.

**C.** **Bodily Injury** means physical injury, disease, sickness or death of any person, including any mental anguish, mental injury, emotional distress, pain and suffering or shock resulting therefrom.

**D.** **Claim** means a written demand for money or services received by the **Insured** and arising out of any **Wrongful Act**, including the service of suit, the institution of any alternative dispute resolution proceeding or any written request to toll or waive the statute of limitations. **Claim** shall not include criminal proceedings or **Disciplinary Proceedings**, regardless of the allegations made against any **Insured**.

**E.** **Claim Expenses** means:

1. reasonable and necessary fees charged by attorneys designated by the **Company**, or designated by the **Insured** with the **Company's** written consent, to defend a **Claim**; and

2. all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** if incurred by the **Company**, or by the **Insured** with the written consent of the **Company**, including but not limited to, premiums for any appeal bond, attachment bond or similar bond, but without any obligation of the **Company** to apply for or furnish any such bond.

**Claim Expense** with respect to a covered **Claim** will be paid first and such payment will reduce the amount available to pay **Damages**. **Claim Expenses** do not include salary charges, wages or expenses of employees or officers of the **Company** or any **Insured**.

**F.** **Company** means the insurance company issuing this **Policy** as listed on the Declarations Page.

**G.** **Content** means data, digital code, images, drawings, scents, sounds, tastes, texts or textures.

**H.** **Cyber Security Breach** means the **Insured's** computer network security activities which result in:

1. the failure to prevent the introduction or transmission of a computer virus or any other malicious code, but only if such computer virus or malicious code affects the data, software, firmware, systems or networks of the **Insured's** clients; or
2. the failure to provide the **Insured's** clients with access to the **Insured's** website or computer or communications network when the clients have authorized use of the **Insured's** website or computer or communications network; or
3. failure to prevent unauthorized access to, or use of, data, software, firmware, systems or networks containing private or confidential information of the **Insured's** client; or
4. the destruction, deletion or corruption of the electronic data of the **Insured's** clients; or
5. failure to prevent the theft, unauthorized or illegal disclosure or loss of the following information of the **Insured's** clients:
   a. an individual, natural person's private **Content**, or
   b. commercial confidential information that resides in or on the **Insured's** hardware devices or data systems.

**I.** **Cyber Wrongful Act** means any actual or alleged act, error or omission committed by any **Insured** or by any person whose act, error or omission the **Insured** is legally responsible, arising solely from the performance of, or failure to perform, the **Insured's Professional Services**, and that:

1. such **Professional Services** are specifically related to **Information Technology Services**; or
2. results in the failure of **Information Technology Products** to perform or serve the intended purpose; or
3. results in a **Cyber Security Breach**.

**J.** **Damages** means judgments (including pre-judgment or post-judgment interest), awards and settlements, provided all settlements are negotiated with the assistance and approval of the **Company**. **Damages** also includes punitive and exemplary damages, and the multiple portions thereof, to the extent that such damages are insurable under the law of the most favorable applicable jurisdiction. **Damages** do not include:

1. fees, costs and expenses paid or incurred or charged by any **Insured** or the return or reimbursement of fees, costs or expenses paid to the **Insured**; no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing; or
2. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule; or
3. injunctive or declaratory relief and costs to comply with injunctive relief; or
4. any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order; or
5. salaries, wages, overhead or benefit expenses associated with any **Insured** or any person whose act, error or omission the **Insured** is legally responsible.

**K.** **Disciplinary Proceeding** means any disciplinary matter including but not limited to any proceeding by an administrative, disciplinary, governmental or regulatory agency, board, body or official to investigate charges of professional misconduct in the performance of, or failure to perform, **Professional Services**; provided, however, **Disciplinary Proceeding** shall not include a criminal proceeding.

**L.** **Executive Officer** means any Principal, President, Chief Executive Officer, Managing Partner, Managing Member, Chief Financial Officer, Chief Operating Officer, Chief Compliance Officer, In-House General Counsel or Risk Manager (or the functional equivalent of such positions) of the first **Named Insured**.

**M.** **Extended Reporting Period** means the period of time after the end of the **Policy Period** for reporting a **Claim** that is first made against the **Insured** and arises from a **Wrongful Act** that fully occurred prior to the end of the **Policy Period**, and which is otherwise covered by this **Policy**.

**N.** **Information Technology Products** means a computer or telecommunication hardware or software product or other electronic product that is created, developed or manufactured by the **Insured** for others including software updates, service packs and other maintenance releases for such products.

**O.** **Information Technology Services** means:

1. consulting on, design of, development of, analysis of, integration of, interface of, modification of and programming of software, hardware, networks, telecommunication systems and electronic or digital devices performed by the **Insured** for the **Insured's** clients; or
2. installation of, training in the use of, support of, servicing of, maintenance of, and repair of the **Insured's Information Technology Products**; or
3. marketing of, selling of, licensing of and distribution of the **Insured's Information Technology Products**; or
4. storage of, warehousing of, mining of and processing of data by the **Insured** for the **Insured's** clients; or
5. managing, operating, administering and hosting the **Insured's Information Technology Products** for the **Insured's** clients; or
6. activities performed on the **Insured's** website(s);

provided, however, **Information Technology Services** shall not mean **Information Technology Products**.

**P.** **Insurance Services Wrongful Act** means any actual or alleged act, error or omission committed by any **Insured** or by any person whose act, error or omission the **Insured** is legally responsible, arising solely from the performance of, or failure to perform, the **Insured's Professional Services**.

**Q.** **Insured** means:

1. the **Insured Organization**; and
2. any **Insured Person**; and
3. any solicitor, sub-agent, sub-producer or independent contractor as an individual or entity, but only for **Professional Services** performed on behalf of the **Insured Organization**, and only with respect to **Professional Services** facilitated through the **Insured Organization**.

**R.** **Insured Person** means:

1. any person who is, was or hereafter becomes a partner, principal, officer, director, shareholder, manager, member, or employee of the **Insured Organization**, but only for **Professional Services** performed in such capacity on behalf of the **Insured Organization**;
2. any intern or temporary or leased personnel hired as such by the **Insured Organization**, but only for **Professional Services** performed under the direct supervision of and exclusively on behalf of the **Insured Organization**;
3. any retired partner, principal, officer, director, member or employee of the **Insured Organization**, but only while acting within the scope of their duties as a consultant for the **Insured Organization**;
4. the estate, heirs, executors, administrators, assigns, and legal representatives of an **Insured Person** in the event of such **Insured Person's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured Person** would have been provided coverage under this **Policy**;
5. the spouse or domestic partner of an **Insured Person**; provided, however, coverage is only afforded to such spouse or domestic partner for a **Claim** arising solely out of their status as such and where such **Claim** seeks damages from marital community property, jointly held property or property transferred from an **Insured Person** to the spouse or domestic partner. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or domestic partner.

**S.** **Insured Organization** means any **Named Insured** and any **Subsidiary**.

**T.** **Media Activities** means **Media Communications** and / or the gathering, collection or recording of **Media Material** for inclusion in any **Media Communication** in the ordinary course of the **Insured's** business.

**U.** **Media and Personal Injury Wrongful Act** means any actual or alleged act, error or omission committed by any **Insured** or by any person whose act, error or omission the **Insured** is legally responsible, arising solely from the performance of, or failure to perform, the **Insured's Professional Services**, **Media Activities** or **Information Technology Services** that result in:

1. infringement of copyright, piracy, plagiarism or misappropriation or unauthorized use of ideas under contract; or
2. infringement of trade dress, domain name, title or slogan, or the dilution or infringement of trademark or service mark; or
3. negligence regarding the **Content** of any **Media Communication** including harm caused through any reliance or failure to rely upon such **Content**; or
4. defamation, libel, slander, product disparagement, trade libel, or other tort related to disparagement or harm to the reputation or character of any person or organization; or
5. invasion or interference with the right to privacy or of publicity; or
6. misappropriation of any name or likeness for commercial advantage; or
7. false arrest, detention or imprisonment or malicious prosecution; or

8. invasion of or interference with any right to private occupancy, including trespass, wrongful entry, eviction or eavesdropping.

**V. Media Communications** means the display, broadcast, dissemination, distribution or release of **Media Material** to the public by the **Insured**.

**W. Media Material** means information in the form of words, sounds, numbers, images or graphics in electronic, print or broadcast form, including **Advertising**, but does not mean computer software or **Content**.

**X. Named Insured** means any entity or individual designated in Item 1. of the Declarations.

**Y. Policy** means, collectively, the Declarations, the **Application**, this policy form and all written endorsements issued to form part of this policy form.

**Z. Policy Period** means the period of time from the inception date shown in Item 2. of the Declarations to the earlier of the expiration date shown in Item 2. of the Declarations or the effective date of cancellation of this **Policy**.

**AA. Prior Insurer** means an insurer, including the **Company** and any subsidiary or affiliate of the **Company**, who has issued a professional liability insurance policy that is applicable to a **Claim**, such policy having an inception date prior to the **Policy Period**.

**BB. Professional Services** means the following services performed by the **Insured** for others, including such services that are performed electronically using the Internet or a network of two or more computers:

1. services as an insurance agent, insurance general agent, insurance broker, surplus lines broker, or wholesale insurance broker; and
2. services as an insurance managing general agent, insurance managing general underwriter, insurance underwriting manager, or insurance program administrator; and
3. services as an insurance claims appraiser, adjuster or administrator; and
4. services as an expert witness concerning insurance related subjects or matters; and
5. services as a formal insurance instructor, lecturer, speaker or teacher; and
6. services as a member of a formal accreditation committee or standards review or similar board or committee; and
7. services as an insurance consultant including risk management, loss control and anti-fraud consulting; and
8. services as an employee insurance benefits counselor; and
9. services as a notary public; and
10. insurance premium financing services; and
11. services as a licensed registered representative performed in connection with the sale and servicing of mutual funds, 401(k) plans, Individual Retirement Accounts (IRAs) or variable life or variable annuity products; and
12. any other services stated in Item 7. of the Declarations or by written endorsement to this **Policy**.

**CC. Property Damage** means physical damage to or destruction of tangible property and / or loss of use of thereof.

**DD. Related Claims** means all **Claims** arising out of a single **Wrongful Act**, or arising out of **Related Wrongful Acts** in the performance of **Professional Services**.

**EE. Related Entity** means any entity other than the **Insured Organization**:

1. in which any **Insured** is a trustee, principal, managing partner, managing member, director, officer or employee at the time the **Wrongful Act** is committed; or
2. in which any **Insured** or members of the immediate family of any **Insured** directly or indirectly owns or controls more than 10% of the issued and outstanding shares, units or other portions of the capital of such entity at the time the **Wrongful Act** is committed, but only if such entity's outstanding shares, units or other portions of capital are publicly traded; or
3. in which any **Insured** or members of the immediate family of any **Insured** directly or indirectly owns or controls more than 50% of the issued and outstanding shares, units or other portions of the capital of such entity at the time the **Wrongful Act** is committed, but only if such entity's outstanding shares, units or other portions of capital are privately traded; or

4 which owns, manages or controls any **Insured** at the time the **Wrongful Act** is committed.

**FF. Related Wrongful Acts** means all **Wrongful Acts** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**GG. Retroactive Date** means the date set forth in Item 5. of the Declarations.

**HH. Subsidiary** means:

1. an entity in which the **Named Insured** owns more than a 50% interest, either directly or indirectly through one or more of its **Subsidiaries**, on or before the inception date of the **Policy** and such **Subsidiary** was not otherwise specifically excluded by endorsement to this **Policy**; or
2. an entity that an **Insured** forms or acquires during the **Policy Period**, subject to the terms of section V. Q. of this **Policy**.

In all events, coverage as is afforded with respect to a **Claim** made against a **Subsidiary** shall only apply for **Wrongful Acts** committed or allegedly committed while the entity meets the criteria set forth in sub-paragraphs 1 or 2 above. An entity ceases to be a **Subsidiary** when the **Named Insured** ceases to own more than 50% of the issued and outstanding voting interest either directly or indirectly through one or more of its **Subsidiaries**.

**II.** **Wrongful Act** means any **Insurance Services Wrongful Act**, **Cyber Wrongful Act** or **Media and Personal Injury Wrongful Act**.

## IV. Exclusions

This **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**:

**A.** based on or arising out of:

1. any dishonest, fraudulent or criminal act by or on behalf of an **Insured**; provided, however, if a **Claim** made against an **Insured** contains both matters covered by this **Policy** and matters excluded by this Exclusion IV. A. 1., the **Company** shall pay **Claim Expenses** for such **Claim** unless or until there is an adverse admission by or final adjudication against any **Insured** as to such conduct; or

2. the gaining by the **Insured** of any personal profit, gain or financial advantage to which the **Insured** is not legally entitled; or

3. any act committed with knowledge of its wrongful nature or with the intent to cause damage.

Exclusion IV. A. shall only apply to any **Insured** who had knowledge of or participated in such conduct. For purposes of this exclusion, the knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** and only the knowledge of an **Executive Officer** shall be imputed to the **Insured Organization**.

**B.** based on or arising out of **Bodily Injury** or **Property Damage**; unless the **Claim** results from **Professional Services**. However, this **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim** based on or arising out of:

1. any **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use (including operation, loading and unloading) or entrustment of others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any **Insured**; or

2. any physical, sexual or mental abuse, molestation or harassment or any **Claim** for failure to prevent, bar, halt, supervise, employ, train, retain or control any physical, sexual or mental abuse, molestation or harassment; or

3. any **Claim** for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of any product or component part associated with the **Insured's Professional Services** if such product or component part is recalled from the market or from use by any person or organization because of a defect, deficiency, inadequacy or dangerous condition in it; or

4. any **Claim** for which coverage would be afforded under a Premises/Operations Liability Policy, Commercial General Liability Policy, Products/Completed Operations Liability Policy, Umbrella or Excess Policy even if **Damages** or **Claim Expenses** are not covered in whole or in part by such policies for any reason; or

5. any **Bodily Injury** to any employee, subcontractor, independent contractor or any employee of any subcontractor or independent contractor or any **Claim** under any workers' compensation, unemployment compensation employer's liability, disability benefits or any similar law.

**C.** brought by or on behalf of an **Insured** or any **Related Entity**; provided, however, this exclusion shall not apply in their capacity as a client.

**D.** based on or arising out of any actual or alleged **Professional Services** performed for or by any **Related Entity**; provided, however, this exclusion shall not apply in their capacity as a client.

**E.** based on or arising out of any actual or alleged sale of or failure to sell any securities; provided, however, this exclusion shall not apply to the sale of or failure to sell mutual funds, 401(k) plans, Individual Retirement Accounts (IRAs) or variable life or variable annuity products.

**F.** based on or arising out of any guarantee of any future premium payment, of any investment result or return, of any interest rate or yield, or of any tax consequence in connection with any mutual fund, 401(k) plan, Individual Retirement Account (IRA), variable life product, variable annuity product or security.

**G.** based on or arising out of: (1) the actual or alleged commingling of, or failure to collect or safeguard, client funds or accounts by an **Insured**, or (2) the failure to pay, collect or return premium; provided, however, this exclusion shall not apply to allegations of negligent bookkeeping errors or oversights.

**H.** based on or arising out of the **Insured's** activities as a fiduciary or plan administrator with respect to any pension, profit sharing, health and welfare, or any other employee benefit plan or trust sponsored, established, funded, or managed by any **Insured** for its own employees, including any **Claim** under the Employee Retirement Income Security Act of 1974, and any amendments, regulations or orders issued pursuant thereto.

**I.** based on or arising out of any actual or alleged employment related act, error or omission including the refusal to employ or termination of employment of any person or organization, or any discrimination on any basis as defined by federal, state or local statute, regulation, law or ordinance; provided, however, this exclusion shall not apply to the soliciting, placing, selling or servicing of insurance for a client of the **Insured**.

**J.** based on or arising out of any actual or alleged: (1) patent infringement, (2) unfair competition based upon any actual or alleged patent infringement, or (3) misappropriation of trade secrets.

**K.** based on or arising out of the notarization of a signature without the physical appearance of the signatory before the **Insured**.

**L.** based on, arising out of, or in any way involving any actual, alleged or threatened exposure to nuclear source material, nuclear by-product materials, nuclear waste activities, nuclear incident, or extraordinary nuclear occurrence, as defined in the Atomic Energy Act of 1954 or as amended; provided, however, that this exclusion shall not apply to the soliciting, placing, selling or servicing of insurance for a client of the **Insured**.

Solely with respect to coverage provided by this **Policy** for any **Cyber Wrongful Act** or **Media and Personal Injury Wrongful Act**, this **Policy** also does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**:

**M.** based on or arising out of: (1) inaccurate, inadequate or incomplete description of the price of goods, products or services, (2) cost guarantees, cost representations or contract price estimates of a probable costs or cost estimates actually or allegedly being exceeded, (3) the failure of goods, products or services to conform with any represented quality or performance contained in any **Advertising**, or (4) any actual or alleged gambling, contest, lottery, promotional game or other game of chance.

**N.** based on or arising out of any actual or alleged obligation to make licensing fee or royalty payments, including but not limited to the amount of timeliness of such payments.

**O.** based on or arising out of any costs or expenses incurred or to be incurred by the **Company** or others for: (1) the reprinting, recall, removal or disposal of any **Media Material** including any media or products containing such **Media Material**, or (2) the withdrawal, recall, inspection, repair, replacement, reproduction, removal or disposal of **Information Technology Products** including any products or other property of others that incorporate **Information Technology Products**, work product resulting from or incorporating the result of **Information Technology Products**, or any products or other property on which **Information Technology Services** are performed; provided, however, this Exclusion IV. O. shall not apply to **Claims** for the resulting loss of use for the **Medial Material** or **Information Technology Products**, or loss of use of the work product resulting from such **Information Technology Services**.

**P.** based on or arising out of any actual or alleged: (a) antitrust violation, (b) restraint of trade, (c) violation of the Sherman Antitrust Act, Clayton Act or Robinson-Patman Act, as amended, or any similar law or legislation of any state, province or other jurisdiction, (d) false, deceptive or unfair trade practices, (e) violation of consumer protection laws, or (f) false or deceptive or misleading **Advertising**.

**Q.** based on or arising out of: (1) any spike in, surge of, decrease in, disruption of, fluctuation in or failure of any infrastructure service or utility provided by a third party including power, water, gas, communications or connectivity, (2) fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, landslide, or other natural catastrophe not caused by human interference, or (3) the existence, emission or discharge or any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability or condition of use of any property.

**R.** based on or arising out of any action brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission or any similar government entity, in such capacity entity's regulatory or official capacity.

**S.** based on or arising out of the delay in delivery or performance or failure to perform at or within an agreed upon period of time.

## V. Policy Conditions

### A. Notice of Claim or Potential Claim

1. Notifying the **Company** of a **Claim**

   As a condition precedent to the obligations of the **Company** under this **Policy**, an **Insured** shall give the **Company** written notice of a **Claim** first made against the **Insureds** during the **Policy Period**, as soon as practicable after an **Executive Officer** becomes aware of the **Claim**, but in no event later than 60 days after the expiration of the **Policy Period**.

2. Notifying the **Company** of a Potential **Claim**

   If during the **Policy Period** the **Insured** becomes aware of any **Wrongful Act** that may reasonably be expected to be the basis of a **Claim** against any **Insured** and during the **Policy Period** gives written notice to the **Company** of such **Wrongful Act** and the reasons for anticipating a **Claim** with full particulars, including but not limited to:

   a. the specific **Wrongful Act**;

b. the dates and persons involved;

c. the identity of anticipated or possible claimants; and

d. the circumstances by which the **Insured** first became aware of the possible **Claim**;

then any such **Claim** that arises out of such reported **Wrongful Act** and that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**; provided, however, this section V. A. 2. shall not apply to the coverage provided for **Cyber Security Breach** Response in section II. D. 4. of this **Policy**.

## B. Reimbursement of the Company

Subject to the **Insured's** right to consent to settlement as set forth in section I. C. of this **Policy**, if the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount within the amount of the Deductible then such amounts shall, upon written demand by the **Company**, be paid by the **Named Insured** within 30 days. If the **Named Insured** fails to pay the Deductible, then all the **Insureds** shall be jointly and severally obligated to pay the Deductible. Any funds advanced by the **Company**, at its option, shall serve to reduce the Limit of Liability. If the **Company** brings suit to collect the Deductible, then the **Insureds** responsible to pay the Deductible also shall pay the legal fees, costs and expenses incurred by the **Company** to collect the Deductible.

## C. Territory

This **Policy** applies to any **Wrongful Act** taking place anywhere in the world.

## D. Other Insurance

If there is other valid and collectible insurance that applies to a **Claim** covered by this **Policy**, the other insurance shall be primary and this **Policy** shall be excess over the other insurance, unless the other insurance is written specifically excess of this **Policy**. This **Policy** will then apply to the amount of the **Claim** that exceeds the available limits of liability and any deductible or retention amounts of the other insurance.

## E. Assistance and Cooperation of the Insured

The **Insured** shall cooperate with the **Company** and, upon the **Company's** request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **Claim**. The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **Claim**. The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or obligation, settle any **Claim** or incur any expense without the written consent of the **Company**.

## F. Legal Action Against the Company

No individual or entity has a right under this **Policy** to join the **Company** as a party to any action seeking **Damages** from any **Insured**. No action may be brought against the **Company** unless the **Insured** has fully complied with all the terms of this **Policy**.

## G. Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the **Company** of any of its obligations under this **Policy** nor deprive the **Company** of its rights or defenses under this **Policy**.

## H. Subrogation

In the event of any payment under this **Policy**, the **Company** shall be subrogated to all the **Insured's** rights of recovery thereof against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

## I. Changes

Notice to any of the **Company's** agents, or knowledge possessed by any such agent or any other person, shall not act as a waiver or change in any part of this **Policy**. It also will not prevent the **Company** from asserting any rights under the provisions of this **Policy**. None of the provisions of this **Policy** will be waived, changed or modified except by written endorsement, issued to form a part of this **Policy**.

## J. Assignment

No assignment of interest of the **Insured** under this **Policy** shall be valid without the written consent of the **Company**.

## K. Cancellation

1. The **Named Insured** may cancel this **Policy** by written notice to the **Company** stating at what future date cancellation is to be effective.

2. The **Company** may cancel this **Policy** by written notice to the **Named Insured** at the address last known to the **Company**. The **Company** may only cancel this **Policy** for: (1) nonpayment of premium or Deductible, (2) fraud or material misrepresentation in procuring this **Policy**, or (3) changes in law affecting this **Policy**. If the **Company** cancels this **Policy** for nonpayment of premium or Deductible, the **Company** will provide the **Named Insured** written notice stating when, not less than 10 days thereafter, such cancellation shall be effective. If the **Company** cancels this **Policy** for fraud or material misrepresentation in procuring this **Policy** or for changes in law affecting this **Policy**, the **Company** will provide the **Named Insured** written notice stating when, not less than 60 days thereafter, such cancellation shall be effective. The effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.
3. If the **Company** cancels this **Policy**, the earned premium shall be computed pro rata. If the **Named Insured** cancels this **Policy**, the **Company** shall retain the greater of the customary short rate proportion of the premium or 25% of the premium stated in Item 6. of the Declarations. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

### L. Nonrenewal

The **Company** may non-renew this **Policy** by written notice (including by electronic written notice) to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least 60 days before non-renewal is to be effective; provided, however, the **Company** shall not be required to provide such notice if the **Named Insured** notifies the **Company** in writing of its intent not to renew this **Policy**. The offering of terms and conditions different from the expiring terms and conditions shall not constitute a refusal to renew.

### M. Entire Contract

By acceptance of this **Policy**, the **Insured** agrees that:

1. all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**; and
2. this **Policy** is issued in reliance upon the **Insured's** representations; and
3. this **Policy** embodies all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and
4. any material misrepresentation or fraud made by the **Insured** or with the **Insured's** knowledge in applying for this **Policy** or in pursuing a **Claim** under this **Policy** shall be deemed grounds for denial of coverage for such **Insured** who knew, as of the effective date of the **Policy Period**, of the misrepresentations or fraud, whether or not such person knew of the **Application** or this **Policy**.

For purposes of this section V. M., the knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** and only the knowledge of an **Executive Officer** shall be imputed to the **Insured Organization**.

### N. First Named Insured as Sole Agent

The first **Named Insured** set forth in Item 1. of the Declarations shall be the sole agent and will act on behalf of all **Insureds** for: (1) payment or return payment of premium; (2) payment of any Deductible; (2) receipt and acceptance of any endorsements, notices or provisions of this **Policy**; (3) providing or receiving notice of cancellation or nonrenewal; and (4) exercising or declining to exercise any right under this **Policy**, including any **Extended Reporting Period**.

### O. Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** at the address stated in the Declarations or in writing to the authorized representative of the **Company**. If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

### P. Trade and Economic Sanctions

This **Policy** does not provide coverage for **Insureds**, transactions or that part of **Damages** or **Claim Expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions including such sanctions administered by the U.S. Treasury Office of Foreign Assets Control.

### Q. Changes to the Named Insured

If during the **Policy Period** the **Named Insured**:

1. forms or acquires a **Subsidiary** whose gross annual revenues are 20% or less of the **Named Insured's** gross annual revenues at the time of such formation or acquisition and whose activities fall within the scope of the **Professional Services** as disclosed to the **Company** in its most recent **Application** for coverage, then this **Policy** shall apply automatically for such newly created or acquired **Subsidiary**; or

2. forms or acquires a **Subsidiary** whose gross annual revenues are greater than 20% of the **Named Insured's** gross annual revenues at the time of such formation or acquisition, and / or whose activities fall outside the scope of the **Professional Services** as disclosed to the **Company** in its most recent **Application** for coverage, then there shall be no coverage under this **Policy** for the newly formed or acquired **Subsidiary** unless: (i) the **Named Insured** provides the **Company** written notice within 30 days of such formation or acquisition; (ii) the **Company**, in its sole discretion, agrees in writing to insure such newly formed or acquired entity; and (iii) the **Named Insured** pays any additional premium charged by the **Company** and has agreed to any coverage amendment required by the **Company**.
3. merges with an entity such that the **Named Insured** remains an ongoing entity then there shall be no coverage under this **Policy** for the newly merged entity unless: (a) the **Named Insured** provides the **Company** written notice within 30 days of such merger; (b) the **Company**, in its sole discretion, agrees in writing to insure such newly merged entity; and (c) the **Named Insured** pays any additional premium charged by the **Company** and has agreed to any coverage amendment required by the **Company**.

### R. Policy Headings

The descriptions in the headings of this **Policy** are solely for convenience, and form no part of the terms and conditions of coverage.

## VI. Extended Reporting Periods

### A. Dissolution

1. If the **Named Insured** ceases to continue as an ongoing entity or its assets are sold (as used herein "Dissolution"), then this **Policy** shall continue in full force and effect until the expiration date stated in Item 2. of the Declarations as to any **Wrongful Act** fully occurring prior to the effective date of the Dissolution. There shall be no coverage afforded by any provision of this **Policy** for any **Wrongful Acts** occurring after the effective date of the Dissolution.
2. At the expiration of the **Policy Period**, the **Insured** may purchase an optional **Extended Reporting Period** pursuant to section VI. C. of this **Policy**.

### B. Automatic Extended Reporting Period

1. If this **Policy** is canceled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable 60 day **Extended Reporting Period** starting at the termination of the **Policy Period** only if there is no other policy or policies that would otherwise provide insurance for such **Wrongful Act**, error or omission. This automatic **Extended Reporting Period** will terminate after 60 days.
2. The **Company's** liability for all **Claims** reported during the automatic **Extended Reporting Period** shall be part of and not in addition to, the Limit of Liability for the **Policy Period** as set forth in Item 3. of the Declarations and section II. of this **Policy**.

### C. Optional Extended Reporting Period

1. If the **Named Insured** or the **Company** cancels or non-renews this **Policy**, then the **Named Insured** shall have the right, upon payment of the appropriate percentage of the "full annual premium", as provided in section VI. C. sub-paragraph 2. of this **Policy**, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made and reported in writing to the **Company** during the appropriate period of months after the date upon which the **Policy Period** ends, but only with respect to a **Wrongful Act** that occurred prior to the end of the **Policy Period** and is otherwise covered by this **Policy**. Such appropriate period of months shall be referred to as the optional **Extended Reporting Period**. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the **Policy Period**. Such right must be exercised by the **Named Insured** within 60 days of the termination of the **Policy Period** by providing: (a) written notice to the **Company**; and (b) with the written notice, the amount of additional premium described below.
2. The percentage of the "full annual premium" and period of months for the optional **Extended Reporting Period** is:
   a. 12 months optional **Extended Reporting Period** for 100% of the "full annual premium" of this **Policy**, or
   b. 24 months optional **Extended Reporting Period** for 150% of the "full annual premium" of this **Policy**, or
   c. 36 months optional **Extended Reporting Period** for 185% of the "full annual premium" of this **Policy**, or
   d. 48 months optional **Extended Reporting Period** for 210% of the "full annual premium" of this **Policy**, or
   e. 60 months optional **Extended Reporting Period** for 235% of the "full annual premium" of this **Policy**.
3. The premium for the optional **Extended Reporting Period** is due on its effective date. This optional **Extended Reporting Period** is non-cancelable and the entire premium shall be deemed fully earned at its commencement without any obligation by the **Company** to return any portion thereof.
4. The **Company's** liability for all **Claims** reported during the optional **Extended Reporting Period** shall be part of and not in addition to the Limit of Liability for the **Policy Period** as set forth in Item 3. of the Declarations and section II. of this **Policy**.

## D. Elimination of Right to any Extended Reporting Period

There is no right to any **Extended Reporting Period** if the **Company** cancels or refuses to renew this **Policy** for: (1) non-payment of premiums or deductibles that are past due; (2) non-compliance by an **Insured** with any of the terms and conditions of this **Policy**; (3) any material misrepresentation or omission in the **Application** for this **Policy**; or (4) any fraud by an **Insured**.

## E. Extended Reporting Period is Not a New Policy

It is understood and agreed that any applicable **Extended Reporting Period** shall not be construed to be a new policy of insurance and any **Claim** submitted during such period shall otherwise be governed by this **Policy**.

## EXTENSION OF POLICY PERIOD

In consideration of the premium paid for this Endorsement, the **Policy Period** set forth in Item 2. of the Declarations is amended to read as follows:

**Item 2. Policy Period**:

From 01/01/2020 (inception date) to 06/30/2021 (expiration date)

(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured**)

Additional Premium Due: $ 5,000

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>06/01/2021 | Authorized Representative |

# Nautilus Insurance Company

## OPTIONAL EXTENDED REPORTING PERIOD ACCEPTANCE

In consideration of the additional premium shown below:

1. The First **Named Insured** has notified us in writing that it wishes to purchase an Optional **Extended Reporting Period** pursuant to section **VI.** of this **Policy**.
2. The First **Named Insured** has elected an Optional **Extended Reporting Period** of 12 months.
3. The additional premium due for this Optional **Extended Reporting Period** is $43,900.
4. The Optional **Extended Reporting Period** will be from 06/30/2021 to 06/30/2022 (both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** set forth in Item 1. of the Declarations). Such Optional **Extended Reporting Period** applies only to **Claims** that are first made against the **Insured** during the Optional **Extended Reporting Period** but only with respect to a **Wrongful Act** that occurred prior to the end of the **Policy Period** and which is otherwise covered by this **Policy**.
5. Effective 06/30/2021, **Item 2.** of the Declarations of this **Policy** is deleted and replaced with the following:

**Item 2. Policy Period**:

From 01/01/2020 (inception date) to 06/30/2021 (expiration date)
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured**)

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Whenever printed in this Endorsement, the boldface type terms shall have the same meanings as indicated in the Policy Form. All other provisions of the Policy remain unchanged.

| | |
|---|---|
| Insured<br>Armour Risk Management, Inc. | Policy Number<br>INS9033954-0120 |
| Effective Date of This Endorsement<br>06/30/2021 | Authorized Representative |